LATRENDA FLEMING,

      Petitioner,

v.                                      Civil Action No. 2:16cv19
                                      (Judge Bailey)

JENNIFER SAAD, Warden,

      Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On March 22, 2016, the *pro se* petitioner, an inmate then-incarcerated[1] at Hazelton SFF in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus pursuant to 28 U.S.C. §2241, seeking to complete the remainder of her federal sentence in a halfway house. Along with her petition, Petitioner filed a copy of her Prisoner Trust Account Report with attached Ledger Sheets; a Motion for Leave to File Excess Pages; and a Motion for Appointed Counsel. The Clerk of Court sent petitioner a Notice of Deficient Pleading, advising her to either pay her $5.00 filing fee or file a motion to proceed as a pauper within twenty-one (21) days. Petitioner filed a motion to proceed as a pauper and paid the $5.00 filing fee on April 4, 2016. ECF No. 11.

By separate Orders entered April 18, 2016, Petitioner's motion for leave to file excess pages was granted and her motion for court-appointed counsel was denied. ECF No. 12 & 13. On April 19, 2016, Petitioner's motion to proceed as a pauper was denied as moot. ECF No. 14. On April 26, 2016, the undersigned conducted a preliminary review of the petition and determined that summary dismissal was not appropriate at that time. Accordingly, a show cause order was entered. ECF No. 16. On April 28, 2016, the respondent filed a Motion to Dismiss

---

[1] Petitioner is now incarcerated at the York County Prison in York, Pennsylvania. See ECF No. 24.

and response to order to show cause with a memorandum in support. ECF No. 18 & 19.  Because Petitioner was proceeding *pro se,* on May 3, 2016, a <u>Roseboro</u>[2] Notice was issued.  On May 9, 2016, Petitioner filed her response, titled "Petitioner's Reply to Respondents [sic] Memorandum Motion to Dismiss and Response to Order to Order to Show Cause." ECF No. 23.  On July 5 and July 20, 2016, Petitioner filed two Notices of Change of Address.  ECF No. 24 & 25.

This matter is now pending before the undersigned for Report and Recommendation.

## II. <u>Facts</u>[3]

On October 20, 2010, Petitioner was arrested in the Eastern District of Virginia pursuant to a Criminal Complaint naming her in one count of wire fraud, in violation of 18 U.S.C. § 1343. ECF No. 4 and 1. On December 9, 2010, Petitioner signed a waiver of indictment.  ECF No. 17. That same day, a Criminal Information was filed, charging Petitioner in Count One with wire fraud in violation of 18U.S.C. §1343 and in Count Two with aggravated identity theft, in violation of 18 U.S.C. § 1028A. ECF No. 18. Pursuant to a written plea agreement, Petitioner entered pleas to both counts that same day. ECF No. 20 & 19.  In the agreement, the parties stipulated and agreed to the entry of a forfeiture money judgment in the amount of $244,358.43 and to forfeit all interests in any property traceable to, derived from, fungible with, or a substitute for the property constituting the proceeds of Petitioner's offense, including but not limited to approximately $1,011.67 in U.S. currency seized from her at the time of her arrest. ECF No. 20, ¶ 13 at 7. Further, Petitioner agreed to "participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or

---

[2] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975).

[3] The citations in this section are to Petitioner's underlying criminal case in the Eastern District of Virginia, Case No. 1:10cr449.

imposes a schedule of payments." <u>Id.,</u> ¶8 at 5. The agreement also contained a waiver of petitioner's appellate rights. <u>Id.,</u> ¶ 6 at 4 – 5.

On March 4, 2011, Petitioner was sentenced to a term of 54 months imprisonment in the Federal Bureau of Prisons ("BOP") with credit for time served on Count One, and 24 months imprisonment in the BOP on Count Two, to run consecutive to the sentence in Count One, to be followed by a 3-year term of supervised release on Count One, concurrent with a 1-year term of supervised release on Count Two. Petitioner was directed to pay a special assessment of $200.00 and a Consent Order of Forfeiture was entered in open court. She was directed to pay restitution totaling $241,095.50. ECF No 29, 30, 31, & 32.

Petitioner did not file a direct appeal, nor did she file a motion to vacate under 28 U.S.C. § 2255. However, on September 3, 2013, Petitioner filed a letter motion requesting that the Court amend the loss amount in her Statement of Facts and in the Restitution Judgment entered at her sentencing. ECF No. 37. By Order entered September 13, 2013, the letter motion was denied. ECF No. 39. Petitioner appealed. ECF No. 42. By unpublished opinion issued on January 14, 2014, the Fourth Circuit Court of Appeals affirmed the district court's denial of Petitioner's self-styled Fed. R. Crim. P. 36 motion. ECF No. 47. Petitioner did not file a petition for writ of *certiorari* with the United States Supreme Court.

### III. <u>The Pleadings</u>

#### A. <u>The Petition</u>

Petitioner is raising multiple claims, some of which are more properly raised in a motion to vacate pursuant to 28 U.S.C. § 2255. She is seeking to challenge a detainer placed on her by

the York County Sheriff's Department based on a York County Superior Court [sic] judgment[4] that she contends was "void *ab initio*" because it was lodged after an illegal sentencing. ECF No. 1 at 5. She argues that the detainer prevents the BOP from releasing her to a halfway house for the last 270 days of her federal sentence. Id. at 6. She also contends that her probation "was violated without me being present" via teleconference, in violation of her due process rights. Id. at 7. She asserts that appointed counsel advised her to stipulate to the state probation violation in exchange for a sentence that would run concurrent with her federal sentence, but instead, the York County Court [sic] gave her a consecutive sentence. Id. She contends counsel was ineffective for "causing" her to receive a sentence other than that which she agreed to accept and despite numerous requests from her to him, asking him to correct her state sentence to make it concurrent with her federal sentence, he repeatedly sent her letters telling her that it was concurrent "instead of checking it out and getting it corrected." Id. at 8. She argues that the York County Sheriff's Office assured her that they would not extradite her "from outside of Pennsylvania" but then they held the "unlawful revocation hearing" via teleconference. Id. She avers that her probation began on May 18, 2010 and expired on May 17, 2012, but it was revoked on May 28, 2014, two years and eleven days after her sentence expired. Id. at 9. She argues that York County Superior Court [sic] had no jurisdiction to revoke her probation. Id.

---

[4] Petitioner has attached to her petition a copy of a May 28, 2014 Order from the Court of Common Pleas of York County, Pennsylvania, noting that Petitioner violated her supervision by committing [the federal charges for which she was convicted in the E.D. Va.] while she was serving her supervision in two Pennsylvania Court of Common Pleas cases: Case # CP-67-CR-6533-2009, and Case # CP-67-CR-1416-2010. Accordingly, in Case # CP-67-CR-6533-2009, she was sentenced to a term of 6 to 23 months incarceration for the parole violation, to be served consecutive to her then-current federal sentence. In Case # CP-67-CR-1416-2010, she was also sentenced to 6 to 23 months incarceration for the parole violation, but this sentence was to run concurrent with the sentence just imposed in CP-67-CR-6533-2009, but consecutive to the Petitioner's then-current federal sentence. See ECF No. 1-13 at 1 – 2.

Finally, she contends that the loss of the halfway house placement as a result of the detainer is a denial of liberty interest and is thwarting her pre-release reentry rehabilitation process. Id. at 10.

As relief, she request that this court "dismiss the detainer[;]" deem the York County judgment and orders void; and direct the BOP to begin her halfway house process immediately. Id. at 12.

## B. Respondent's Motion to Dismiss

The Respondent argues that the petition should be dismissed. Respondent notes that Petitioner's release date is July 4, 2016 and her "sole argument" is that the BOP should permit her to complete the remainder of her federal sentence in a Community Corrections Center ("CCC") or halfway house. ECF No. 19 at 1.

Respondent avers that 18 U.S.C. § 3621(b) provides that the BOP shall designate the place of the prisoner's imprisonment, and that the BOP may designate any available penal or correctional facility that meets its minimum standards of health and habitability, regardless of where the prisoner was convicted. In doing so, the BOP considers

1) the resources of the facility contemplated;

2) the nature and circumstances of the offense;

3) the history and characteristics of the prisoner;

4) any statement by the court that imposed the sentence

A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

B) recommending a type of penal or correctional facility as appropriate; and

5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Further, 18 U.S.C. § 3624(c) addresses prerelease custody in particular, and it directs the

Director of the Bureau of Prisons to ensure

> to the extent practicable . . . that a prisoner serving a term of imprisonment spends
> a portion of the final months of that term (not to exceed 12 months), under
> conditions that will afford that prisoner a reasonable opportunity to adjust to and
> prepare for the reentry of that prisoner into the community. Such conditions may
> include a community correctional facility.

BOP Program Statement 7310.04 is promulgated under this statutory authority. It

addresses CCC Utilization and Transfer Procedure and provides guidelines to staff regarding the

use of CCCs, including, *inter alia,* placement criteria and timing of placement. P.S. 7310.04 ¶ 1.

Paragraph 10 provides limitations on an inmate's eligibility for a CCC referral. Inmates "with

unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or

confinement" "shall not ordinarily participate in CCC programs." Id. ¶ 10(f).

Respondent contends that while Congress did not legislate the precise question of

whether inmates with outstanding warrants should be permitted CCC placement, the BOP's

decision on where to place such inmates is reasonable in light of the statutory design because it

follows the instructions set forth by Congress to consider the "history and characteristics of the

prisoner" in determining her placement. 18 U.S.C. § 3621(b)(3). Outstanding warrants are

pertinent facts of the inmate's history: they may also inform an inmate's future behavior once

released from prison and the possibility of re-arrest and re-confinement may create a flight risk.

While the Program Statement does not absolutely ban inmates with outstanding warrants from

participating in a CCC program, it does state that they shall not "ordinarily" be placed at a CCC.

Respondent contends that the BOP's decision to adhere to the Program Statement in

Petitioner's case was not arbitrary, capricious, or an abuse of discretion, given the facts of

Petitioner's situation and its determination that she not be placed in a CCC.

## C. **Petitioner's Response**

Petitioner reiterates her arguments and attempts to refute the Respondent's on the same, contending that Respondent's arguments are "evasive, off-point and moot as it relates to Petitoner's reasons for requesting relief." ECF No. 23 at 2.

## IV. **Standard of Review**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a

right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## V. Analysis

Article III of the United States Constitution, limits the jurisdiction of the federal courts to cases or controversies. Therefore, a case becomes moot when there is no viable legal issue left to resolve. See Powell v. McCormick, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-699 (3rd Cir. 1996).

Here, the BOP website establishes that Petitioner was released from custody on July 1, 2016. She admits that she is now in the custody of York County Prison, in York, Pennsylvania and has notified the Court of her change of address. ECF No. 24 & 25. Accordingly, because

Petitioner is no longer in the custody of the BOP, there is no relief that this court can offer. Therefore, this case is now moot.

## VI. <u>RECOMMENDATION</u>

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss [ECF No. 18] be **GRANTED** and Petitioner's §2241 petition ECF No. 1] be **DENIED** and **DISMISSED as moot.**

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to her last known address as shown on the docket. The Clerk is further directed to transmit copies of this Report and Recommendation to all counsel of record via electronic means.

DATED: September 27, 2016

 /s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE